FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

| | |
|---|---|
| FLORA LEONARD, an individual, | |
| Plaintiff, | **OPINION** |
| v. | Civ. No. 15-02084 (WHW)(CLW) |
| GOLDEN TOUCH TRANSPORTATION OF NEW YORK, INCORPORATED, a New York Corporation, UNITED AIR LINES, INCORPORATED, a Delaware Corporation, and THE PORT AUTHORITY OF NEW YORK & NEW JERSEY, a joint venture | |
| Defendants. | |

---

**Walls, Senior District Judge**

Plaintiff Flora Leonard claims that Defendants Golden Touch Transportation of New York, Incorporated ("Golden Touch"), United Airlines Incorporated, and the Port Authority of New York & New Jersey ("Port Authority") were negligently responsible for an injury she suffered at Newark Liberty International Airport. Plaintiff moves to amend the complaint to assert a claim against a new defendant, correct the spelling of Defendant United Airlines (currently captioned as "United Air Lines"), and include a new claim for relief by her daughter, Plaintiff Karen Velazquez. Defendants have submitted an opposition to the motion to amend and a cross-motion to dismiss the claim against the Port Authority under Federal Rule of Civil Procedure 56. The Court decides the cross-motion to dismiss here and refers the motion to amend/correct the complaint to Magistrate Judge Cathy L. Waldor. The Court decides the motion to dismiss without oral argument. Fed. R. Civ. P. 78. Defendants' motion is denied.

1

FOR PUBLICATION

## PROCEDURAL AND FACTUAL HISTORY

Plaintiff Flora Leonard, a resident of the State of Virginia, filed this action on March 23, 2015, alleging that Defendants were negligently responsible for an injury she suffered while attempting to board a shuttle bus at Newark Liberty International Airport in Newark, New Jersey ("Newark Airport") and seeking reasonable damages, counsel fees, interest, and costs of suit. Complaint, ECF No. 1. The complaint alleges that, on or about August 6, 2014,[1] Leonard was a passenger on a United Airlines flight from Norfolk, Virginia destined for the United Kingdom and was required to transfer flights via shuttle bus at Newark Airport, "the premises of which are owned, operated, occupied, managed, inspected, held in trust, and/or maintained by" the Port Authority. *Id.* at 3 ¶ 1. The complaint does not specify exactly how Leonard was injured but alleges that she was a passenger on an "airline vehicle transportation service" bus operated by Golden Touch, which had been granted a privilege permit to operate at Newark Airport by the Port Authority. *Id.* at 6-7 ¶ 2. The parties agree that Plaintiff "tried to step onto a Golden Touch shuttle bus and fell on the bus steps, cutting her leg." Def. Cross-Mot. Dismiss, ECF No. 21-2 at 1. Defendants filed an answer and request for a statement of damages on May 4, 2015. ECF No. 9. The parties submitted a joint discovery plan on June 10, 2015. ECF No. 13.

On August 27, 2015, Leonard filed an amended complaint and proposed order granting permission to file an amended complaint. ECF No. 15 (terminated). The filings were rejected because they did not include a motion to amend/correct the complaint. On August 31, 2015, Leonard filed a second motion to amend/correct the complaint. ECF No. 18. Leonard seeks to (a) correct the spelling of Defendant United Air Lines, Inc., (b) correct the date of the alleged occurrence, (c) assert an additional claim for negligence against new defendant Gateway

---

[1] In her second motion to amend/correct the complaint, Leonard corrects this date to August 5, 2014. ECF No. 18 at 3.

FOR PUBLICATION

Security, Inc., a New Jersey corporation, and (d) assert a claim for relief against all Defendants by her daughter, Karen Velazquez, who allegedly boarded the shuttle bus ahead of Leonard and "was made immediately aware of her mother's injuries." P. Mem. Supp. Second Mot. Amend Complaint, ECF No. 18 at 2.

Defendants submitted a letter on August 31, 2015 requesting permission to file a cross-motion to dismiss the Port Authority from this matter with prejudice. ECF No. 19. The Court issued an order permitting Defendants to file the cross-motion on September 2, 2015. ECF No. 20.

Defendants filed a joint cross-motion to dismiss the claim against Port Authority with prejudice under Federal Rule of Civil Procedure 56 and opposition to Plaintiff's second motion to amend the complaint on September 21, 2015. ECF No. 21-2. Defendants argue that the Court should grant summary judgment in favor of the Port Authority because it was an "out-of-possession commercial landlord" and owed no duty of care to Plaintiff at the time of her injury. Defendants point to the "privilege permit" issued by the Port Authority to Golden Touch, which gave Golden Touch the non-exclusive privilege to operate bus services at Newark Airport and which Defendants claim required Golden Touch to (a) assume all responsibility for maintenance and repair of its equipment and operating area and (b) indemnify the Port Authority for all claims caused by the negligence of Golden Touch.

Plaintiff filed a brief in opposition to the motion to dismiss on October 19, 2015, ECF No. 23, and Defendants submitted a reply brief in support of their motion on October 26, 2015. ECF No. 25.

## STANDARD OF REVIEW

FOR PUBLICATION

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute between the parties must be both genuine and material to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is material where it would affect the outcome of the suit under the relevant substantive law. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A dispute is genuine where a rational trier of fact could return a verdict for the non-movant. *Id.*

The movant bears the initial burden to demonstrate the absence of a genuine issue of material fact for trial. *Beard v. Banks*, 548 U.S. 521, 529 (2006). Once the movant has carried this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" in question. *Scott*, 550 U.S. at 380 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). Each party must support its position by "citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Scott*, 550 U.S. at 380. At this stage, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249.

"[A] party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b). A "district court c[an] dismiss for failure to state a claim upon motion for summary judgment, but a motion so decided is functionally equivalent to a motion to dismiss." *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 444 (3d Cir. 1977) (citing *Schwartz v. Compagnie General Transatlantique*, 405 F.2d 270, 273 (2d Cir. 1968)). *See also Melo v. Hafer*,

4

912 F.2d 628, 633 (3d Cir. 1990), *aff'd,* 502 U.S. 21 (1991) (court may "dismiss[ ] an action for failure to state a claim on the face of the pleadings on a motion for summary judgment," which is "equivalent to a motion to dismiss").

## DISCUSSION

To state a cause of action in negligence under New Jersey common law, "a plaintiff must prove four elements: '(1) [a] duty of care, (2) [a] breach of that duty, (3) proximate cause, and (4) actual damages.'" *Brunson v. Affinity Federal Credit Union*, 199 N.J. 381, 400 (N.J. 2009) (quoting *Polzo v. Count of Essex*, 196 N.J. 569, 584 (N.J. 2008)). "The threshold inquiry in a negligence action is whether the defendant owed the plaintiff a duty of care." *Holmes v. Kimco Realty Corp.*, 598 F.3d 115, 118 (3d Cir. 2010). The existence of a duty of care is generally a matter of law. *Id.* (citing *Carvalho v. Toll Bros. & Developers*, 143 N.J. 565, 572 (N.J. 1996)). "Under New Jersey law, 'whether a person owes a duty of reasonable care toward another turns on whether the imposition of such a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy.'" *Id.* (quoting *Monaco v. Hartz Mountain Corp.*, 178 N.J. 401, 418 (N.J. 2004)). Ordinarily, a landowner owes a duty "to those who enter the premises upon an invitation for business purposes to provide a reasonably safe place to do that which is within the scope of the invitation." *Keith v. Truck Stops Corp. of Am.*, 909 F.2d 743, 745 (3d Cir. 2009) (quoting *Butler v. Acme Mkts., Inc.*, 89 N.J. 270, 275 (N.J. 1982)) (alterations omitted).

Though some states have "imposed a general duty of reasonable care upon landlords which may not be avoided by lease provisions," New Jersey courts have not. *McBride v. Port Authority of New York and New Jersey*, 295 N.J. Super 521, 526 (N.J. App. Div. 1996) (citing *Milacci v. Mato Realty Co.*, 217 N.J. Super. 297, 301 (N.J. App. Div. 1987); Prosser and Keaton

on Torts, § 63, at 446 (Fifth Edition, 1984)). *McBride*, the primary case relied on by Defendants, holds that a landowner who has leased property to a commercial tenant does not owe a duty of reasonable care to an invitee of the tenant injured on the premises if the tenant has assumed exclusive possession of the premises and responsibility for maintenance and repair, even if the landlord retains the right to re-enter the premises to make repairs on his own. 295 N.J. Super. at 526-27. New Jersey courts have since broadened this holding to protect landlords who lease only the portion of their property where an injury occurred, holding that "a landlord's retention of control of a portion of a building otherwise controlled by its sole tenant does not impose upon the landlord a non-delegable duty of reasonable care owed to third parties to maintain and repair the premises where the lease agreement unquestionably imposes this obligation upon the tenant." *Espinal v. 60 Cedar Lane, LLC*, 2007 WL 93218, at *3 (N.J. App. Div. Jan. 12, 2007). Though *McBride*'s holding has not been adopted by the New Jersey Supreme Court, it has been cited approvingly 19 times by the Appellate Division and once by a federal court in this district. *See Piersol v. U.S.*, 2009 WL 2143645, at *4 (D.N.J. July 14, 2009).

Defendants claim that the October 31, 2009 privilege permit issued by the Port Authority granting Golden Touch the non-exclusive right to provide bus services at Newark Airport is materially similar to the lease agreement in *McBride*, where the court found the landlord owed no duty of care because (a) "the lease agreement placed the burden of maintenance and repair exclusively upon the commercial tenant, and was devoid of an affirmative obligation on the part of the Port Authority to perform any maintenance and repair of the leased premises," and (b) "the lease agreement explicitly shielded the Port Authority from any liability arising from the failure to properly repair or maintain the leased premises." ECF No. 25 at 7-8 (citing *McBride*, 295 N.J. Super. at 526).

6

According to Defendants, the 2009 Privilege Permit includes a Section 6 ("Permittee's Operations") and Section 7 ("Indemnity") that are similar to the provisions addressed by the court in *McBride*. ECF No. 21-2 at 4 (citing Certification of Matthew W. Bauer in Supp. Def. Cross-Mot. Dismiss ("Bauer Certification") Ex. B, Oct. 20, 2009 Newark Liberty International Airport Privilege Permit between the Port Authority of New York & New Jersey and Golden Touch Transportation of New York, Inc., ECF No. 21-3 ("2009 Privilege Permit")).

I. **Summary judgment is appropriate for this claim.**

Summary judgment is appropriate for the claim against the Port Authority because no issue of material fact exists with regard to the Port Authority's assignment of rights and responsibilities to Golden Touch.

Plaintiff contends that an issue of material fact exists because, although Defendants base their motion on the 2009 Privilege Permit, they previously produced separate privilege permits entered into by the Port Authority and Golden Touch in 2010 and 2011. According to Plaintiffs, there are "significant factual disputes as to which of the privilege permits govern[ed] the relationship" between the Port Authority and Golden Touch at the time of Plaintiff's injury. ECF No. 23 at 7.

As Defendants point out, however, the "Permittee's Operations" and "Indemnity" provisions in the 2010 and 2011 Privilege Permits – which, Defendants explain, expanded Golden Touch's privileges by granting permission to operate at John F. Kennedy Airport and LaGuardia Airport in addition to Newark Airport, ECF No. 25 at 1 n.1 – are identical to the provisions in the 2009 Privilege Permit. *Id.* at 8 (citing September 2, 2010 Privilege Permit, ECF No. 23-3 Ex. A at 84; April 1, 2011 Privilege Permit, ECF No. 23-3 Ex. A at 119). Plaintiff has raised a question of fact as to which privilege permit was in effect at the time of Plaintiff's

injury, but this question is not material. Because the relevant sections of the privilege permits are identical, the Court's analysis is the same under any version, and resolution of the question of fact would not affect the outcome of the suit. *Harris*, 550 U.S. at 380.

Plaintiff also suggests, without explanation, that summary judgment is inappropriate because "there may be some very real requirement, contained in the lease between the City of Newark and The Port Authority, which mandates that the Port Authority is responsible for all of the activities and for all of the maintenance at the airport." ECF No. 23 at 9-10. Although it is true that the Port Authority leases most of Newark Airport from the City of Newark, *see State v. C.B.*, 2009 WL 3416115, at *8 (N.J. App. Div. Oct. 9, 2009); Port Authority of New York & New Jersey, *Port Authority Board Approves New Long-Term Airport/Seaport Lease with City of Newark* (Aug. 29, 2002), http://www.panynj.gov/press-room/press-item.cfm?headLine_id=211, Plaintiff's complaint makes no mention of this lease. *See* ECF No. 1 ¶ 1 (alleging that Newark Airport is "owned, operated, occupied, managed, inspected, held in trust and/or maintained" by the Port Authority). Nor do Defendants refer to this lease in their cross-motion to dismiss. Plaintiff makes no attempt to introduce the lease and offers no reason to believe that it would affect the Port Authority's liability in this case, so she has failed to raise anything more than "metaphysical doubt as to the material facts" in question. *Scott*, 550 U.S. at 380. Summary judgment is appropriate.

II.     **The Port Authority is not an out-of-possession commercial landlord protected by *McBride*.**

As discussed, Defendants argue that the Port Authority owed no duty of care to Plaintiff because the "Permittee's Operations" and "Indemnity" sections of the privilege permits create the same protection from liability for out-of-possession commercial landlords recognized in

8

*McBride*. Because the privilege permits do not give Golden Touch exclusive possession of the premises or place sole responsibility for maintenance and repair on Golden Touch, this Court finds that Defendants' reliance on *McBride* is misguided. The Port Authority is not an out-of-possession commercial landlord and is not entitled to summary judgment.

### A. The privilege permits do not give Golden Touch exclusive control of the Port Authority's property.

The lease at issue in *McBride* is distinguishable from the privilege permits. The *McBride* court noted that "[h]istorically a lease was viewed as the sale of an interest in land," *McBride*, 295 N.J. Super. at 525 (quoting *Michaels v. Brookchester, Inc.*, 26 N.J. 379, 382 (N.J. 1958)). Unlike the lease agreement in *McBride*, which gave the lessee "exclusive control and possession" of "about 60 acres and a 300,000 square foot warehouse," *id.* at 527, the privilege permits do not appear to give Golden Touch any interest in the land at Newark Airport at all, let alone an exclusive interest. Instead, as Defendants acknowledge, the privilege permits give Golden Touch "the non-exclusive privilege of providing busing services at Newark Airport" and "allow[ ] the Port Authority the right to grant similar privileges to other businesses at Newark Airport." ECF No. 21-2 at 4, 4 n.5. Defendants have not cited, and the Court cannot find, any cases extending *McBride*'s protection to landlords who retain possession of the premises and merely grant permittees the non-exclusive privilege to operate on them.

In any event, courts in cases similar to this one have held the Port Authority to a landlord's ordinary standard of reasonable care when leasing space to businesses in its transportation stations. *See Lieberman v. Port Authority of New York and New Jersey*, 132 N.J. 76, 95 (N.J. 1993) (Plaintiff robbed while exiting bakery in the Port Authority Bus Terminal in New York City adequately stated claim under New Jersey law that the "Port Authority, in its

capacity as a landlord, may have negligently failed to provide reasonably safe premises for its invitees."); *Potomac Aviation, LLC v. Port Authority of New York and New Jersey*, 413 N.J. Super. 212, 226 (N.J. App. Div. 2010) (in case involving damage to airplane parked on tarmac at Newark Airport leased to co-defendant First Aviation Services by the Port Authority, holding that, "as the owner of the land upon which the plane was parked, the Port Authority had the duty to exercise 'reasonable care to guard against any dangerous conditions on [the] property that [it] either kn[ew] about or should have discovered.'") (quoting *Hopkins v. Fox & Lazo Realtors*, 132 N.J. 426, 434 (N.J. 1993)). Because the privilege permit here conveyed no land interest at all, let alone an exclusive one, the Court finds that the Port Authority owed Plaintiff at least a duty of reasonable care.

### B. The privilege permits do not assign sole responsibility for maintenance and repair of the premises to Golden Touch.

Defendants' claim that Section 6 of the privilege permits assigns sole responsibility for maintaining the premises to Golden Touch is also incorrect. Defendants claim that Section 6, the "Permittee's Operations" section, "obligates Golden Touch to maintain the areas of Newark Airport that were being used for the privileges granted under the Privilege Permit." ECF No. 21-2 at 9. Section 6(c) provides in part that

> [Golden Touch] shall repair, replace, repave or rebuild, or at the Port Authority's election . . . shall pay to the Port Authority the cost to the Port Authority of repairing, replacing, repaving or rebuilding, all or any part of the ramps or other areas upon which it performs the privileges authorized by this Permit which may be damaged or destroyed by [oil, gasoline, or other corrosive or damaging substances] or by any other act or omission of [Golden Touch] or its employees, agents or contractors except for reasonable wear and tear arising out of its operations thereon."

ECF No. 21-2 at 9-10 (quoting 2009 Privilege Permit, ECF No. 21-3 § 6(c)). Section 6(d) requires Golden Touch to "conduct a first-class operation and . . . furnish all fixtures,

equipment, personnel (including licensed personnel as necessary), supplies, materials, and other facilities and replacements necessary or proper therefor, and keep them in a first-class operating condition at all times." *Id.* at 5 (quoting ECF No. 21-3 § 6(d)). Section 6(f), also referenced by Defendants, requires Golden Touch to notify the Port Authority of "any injury or death to any person . . . caused by [Golden Touch's] operations." *Id.* (quoting ECF No. 21-3 § 6(f)).

These provisions certainly assign responsibility to Golden Touch for (a) repairing damage caused to airport roads and ramps by Golden Touch's actions, omissions, and spilled substances, (b) providing and maintaining its own buses, and (c) reporting accidents to the Port Authority, but they do not require Golden Touch to conduct the same general "preventive maintenance" or to "make all necessary repairs and replacements and do all necessary rebuilding with respect to all parts of the premises . . . regardless of whether such repairs are structural or non-structural, ordinary or extraordinary, foreseen or unforeseen" required of the tenant in *McBride*. 295 N.J. Super. at 523; *see also Geringer v. Hartz Mountain Dev. Corp.*, 388 N.J. Super. 392, 400-01 (N.J. App. Div. 2006) (applying *McBride* and holding that landlord owed no duty to plaintiff where lease in both cases "unambiguously placed upon the tenant exclusive responsibility for the maintenance and repair of the area where the plaintiff fell."). Reading the privilege permits in the "light most favorable to the non-moving party," *Scott,* 550 U.S. at 380, the Court finds that the Port Authority has not assigned all responsibility for repairs and maintenance on its land the way it did in *McBride*.

### C. The Indemnity section of the privilege permits does not relieve the Port Authority of its duty of care.

Defendants also contend that Section 7 of the privilege permits, like the lease provision in *McBride* stating that "the Port Authority shall not in any event be liable for an injury or damage

11

to any proper or to any person . . .," 295 N.J. Super. at 527, relieves the Port Authority of its duty of care to Plaintiff. ECF No. 21-2 at 8-11. Section 7(a) states, in part, that Golden Touch

> shall indemnify and hold harmless the Port Authority . . . from and against . . . all claims and demands of third Persons including but not limited to claims and demands for death or personal injuries, or for property damages, arising out of any default of the Permittee in performing or observing any term or provision of this Permit, or out of the operations of the permittee hereunder. . . .

2009 Privilege Permit, ECF No. 21-3 § 6(c).

The Court disagrees with Defendants' claim that the existence of an indemnification clause was a key factor in the *McBride* court's ruling. *See* ECF No. 21-2 at 8-9. The *McBride* court cited the indemnification clause, without comment, as part of a block quotation of the lease in question that also included the statements, "[n]othing in this Section shall or shall be construed to impose upon the Port Authority any obligations so to construct or maintain or to make repairs, alterations, or additions, or shall create any liability for any failure to do so," and that the "Lessee is and shall be in exclusive control and possession of the premises." *McBride*, 295 N.J. Super. at 527. Subsequent cases have cited *McBride* for the holding that an invitee "of a commercial tenant *in exclusive possession* may [not] hold the tenant's landlord responsible for personal injuries suffered on the leased premises, due to a lack of proper maintenance or repair, when the lease *unquestionably places responsibility or repair solely on the tenant*," but have not mentioned the indemnification clause. *Lloglla v. Downing Corp. Inc.*, 2014 WL 2765675, at *2 (N.J. App. Div. June 19, 2014) (emphasis added); *see also*, e.g., *Piersol*, 2009 WL 2143645, at *4 (same); *Ishak v. Jumping Brook Realty Associates, L.L.C.*, 2012 WL 2327737, at *2 (same). The indemnification clause in *McBride* was not essential to that court's holding. Here, where the privilege permits did not grant Golden Touch exclusive possession of the premises or impose on Golden Touch sole responsibility for repairs and maintenance, the indemnification clause cannot be enough to relieve the Port Authority of its duty of care to Plaintiff.

12

FOR PUBLICATION

In any event, as Plaintiff argues, an indemnification clause does not provide a basis for dismissal of a claim. "The fact that Golden Touch may be obligated to indemnify the Port Authority does not relieve the Port Authority from being found negligent." ECF No. 23 at 12 n.2. The Port Authority may use Section 7(a) of the privilege permits to assert a cross-claim that Golden Touch "is or may be liable to the cross-claimant for all or part of" the claim asserted by Plaintiff, Fed. R. Civ. P. 13(g), but under New Jersey law, "a claim for indemnity under a contract does not accrue until the liability is fixed by a judgment against or payment by the indemnitee." *Allegheny Mut. Cas. Co. v. Delachica*, 2006 WL 3476677, at *2 (D.N.J. Nov. 30, 2006) (quoting *United New York Sandy Hooks Pilots Ass'n v. Rodermond Indus., Inc.*, 394 F.2d 65, 75 (3d Cir. 1967)); *First Indem. of America Ins. Co. v. Kemenash*, 328 N.J. Super. 64, 73 (N.J. App. Div. 2000). An indemnification clause does not shield a party from being called into court, and it does not relieve a party of any duty of care it owes to plaintiffs.

### III. Plaintiff's claim that Defendant is a common carrier is unsupported.

Plaintiff claims in her opposition brief not only that the Port Authority owed her *some* duty of care, but that, because she was "actively attempting to board a bus at the time she fell the Port Authority's obligation to a passenger is the duty of a common carrier." ECF No. 23 at 10. Common carriers owe passengers a "greater duty of care" than that required under the ordinary negligence standard. *Mandal v. Port Authority of New York and New Jersey*, 430 N.J. Super. 287, 291 (N.J. App. Div. 1993). *Mandal*, the single case Plaintiff uses to support her assertion, does *not* hold that the common carrier standard applies to the Port Authority when a plaintiff is stepping onto a vehicle. In *Mandal*, which involved a plaintiff who was injured on a train platform, not a train, the court stated in dicta that, "[i]f plaintiff was injured while riding a train or while embarking or disembarking from a train, the common-carrier standard of care *might*

*arguably* apply," but did not decide the issue. *Mandal*, 430 N.J. Super. 287, 292 (emphasis added). Having held that the Port Authority did owe Plaintiff a duty of care and is not entitled to dismissal of the claim, the Court need not determine Defendant's exact duty of care at this point either.

## CONCLUSION

The privilege permits between Defendants the Port Authority and Golden Touch do not render the Port Authority an out-of-possession commercial landlord. Because the Port Authority has not demonstrated that it owed Plaintiff no duty of care at the time of her injury, Defendants' cross-motion to dismiss the action against the Port Authority under Federal Rule of Civil Procedure 56 is denied. Plaintiff's second motion to amend/correct the complaint is referred to Magistrate Judge Cathy L. Waldor. An appropriate order follows.

DATE: 18 November 2015

William H. Walls
Senior United States District Court Judge