UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FLORA LEONARD and KAREN VELAZQUEZ,<br><br>                Plaintiffs,<br>v.<br><br>GOLDEN TOUCH TRANSPORTATION OF NEW YORK, INC., UNITED AIRLINES, INC., THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY, and GATEWAY SECURITY, INC.,<br><br>                Defendants.<br><br>GOLDEN TOUCH TRANSPORTATION OF NEW YORK, INC., UNITED AIRLINES, INC., and THE PORT AUTHORITY OF NEW YORK & NEW JERSEY,<br><br>                Third-Party Plaintiffs,<br>v.<br><br>KAREN VELAZQUEZ,<br><br>                Third-Party Defendant. | **OPINION**<br>Civ. No. 15-2084 |

**Walls, Senior District Judge**

Defendants Golden Touch Transportation of New York, Inc. ("Golden Touch"), United Airlines, Inc. ("United"), the Port Authority of New York and New Jersey (the "Port Authority"), and Gateway Security, Inc. ("Gateway") (collectively, "Defendants") move for summary judgment on all claims asserted by Plaintiffs Flora Leonard and Karen Velazquez ("Plaintiffs") under Federal Rule of Civil Procedure 56. ECF Nos. 89, 92. Plaintiffs oppose. ECF Nos. 91, 102. Decided without oral argument under Federal Rule of Civil Procedure 78, Defendants' motions are granted.

1

## PROCEDURAL HISTORY

This matter involves a slip and fall suffered by Plaintiff Leonard while at Newark Liberty International Airport ("Newark Airport"). Leonard, accompanied by her daughter, Plaintiff Velazquez, was flying from Norfolk, Virginia to the United Kingdom, via Newark Airport, on flights operated by United. ECF No. 33 (Amended Complaint) at 3-4. Newark Airport is leased to and operated by the Port Authority, *id.* at 4, and Leonard slipped and fell when stepping onto a bus operated by Golden Touch, *id.* at 8-10. An electric cart (possibly operated by Gateway) transported Leonard, who uses a cane for mobility assistance, from her initial flight arriving in Newark to the Golden Touch bus, which was to take her to her departing flight. *Id.* at 10-12. Velazquez accompanied her mother to Newark, saw the injuries Leonard sustained when attempting to board the Golden Touch bus, and provided her first aid. *Id.* at 12-13. The gravamen of Plaintiffs' complaint is that Defendants were negligent in failing to provide proper assistance to Leonard, a disabled passenger.

Defendants moved to dismiss Leonard's initial Complaint (before its amendment) under Federal Rule of Procedure 56 on September 21, 2015, ECF No. 21, and Leonard opposed, ECF No. 22. The Court denied Defendants' motion because the Port Authority had not demonstrated that it owed Leonard no duty of care at the time of her injury. *See* ECF No. 28.

## FACTUAL BACKGROUND

### 1. Plaintiffs Begin Their Trip in Norfolk.

On August 5, 2014, Leonard and Velazquez were traveling from Norfolk, Virginia to Manchester, England, via Newark Airport[1], on flights operated by United. ECF No. 89-3 ¶¶ 1, 3, 25; ECF No. 91-1 at 1-2, 4. Leonard walks with a cane, so Velasquez traveled with Leonard to

---

[1] The Port Authority is the commercial landlord of Newark Airport. ECF No. 89-3 ¶ 26; ECF No. 91-1 at 4.

assist her. ECF No. 89-3 ¶ 12; ECF No. 91-1 at 3. Velasquez did not request assistance from United when she booked the trip to Manchester, but she later called United to request aisle seating for Leonard for the duration of their trip; United granted the request. ECF No. 89-3 ¶¶ 13-14; ECF No. 91-1 at 4. Neither Leonard nor Velasquez made any other requests for assistance before their trip. ECF No. 89-3 ¶ 16; ECF No. 91-1 at 4.

Before departing Norfolk Airport, Velazquez requested that Leonard be "flagged" for the duration of her flights. ECF No. 89-3 ¶ 18; ECF No. 91-1 at 4. United "flagged" Leonard for assistance, and neither Leonard nor Velasquez requested any other mobility assistance. ECF No. 89-3 ¶¶ 19-20; ECF No. 91-1 at 4.[2]

### 2. Plaintiffs Arrive in Newark.

When Plaintiffs landed at Newark Airport, they boarded an electric cart—which Velasquez requested—to take them to their connecting flight. ECF No. 89-3 ¶¶ 27-28; ECF No. 91-1 at 4. Defendant Gateway operates electric carts for between-flight transportation at Newark Airport, but the parties dispute whether Gateway or United operated the cart in which Plaintiffs rode. ECF No. 89-3 ¶¶ 31-32, 43; ECF No. 91-1 at 5-6.[3] The electric cart transported Plaintiffs through the airport terminal to a ramp. ECF No. 89-3 ¶ 40; ECF No. 91-1 at 5. The electric cart driver instructed Plaintiffs to walk down the ramp and board a shuttle bus, which would take them to a different terminal for their flight to Manchester. ECF No. 89-3 ¶ 41; ECF No. 91-1 at 5. Neither Leonard nor Velasquez requested additional assistance from the electric cart driver. ECF No. 89-3 ¶¶ 45-46; ECF No. 91-1 at 6.

---

[2] Regardless of how a passenger is "flagged" by United, United will provide whatever assistance the passenger wants. ECF No. 89-3 ¶ 22; ECF No. 91-1 at 4. If a passenger requests a wheelchair for any period of time between flights, United will provide a wheelchair as requested. ECF No. 89-3 ¶¶ 23-24; ECF No. 91-1 at 4.

[3] Velasquez declined to request a wheelchair because she did not think Leonard needed one. ECF No. 89-3 ¶¶ 29-30; ECF No. 91-1 at 4.

3

### 3. Plaintiffs Attempt to Board the Golden Touch Bus.

Defendant Golden Touch owned and operated the bus that was to transport Plaintiffs from the bottom of the ramp to their connecting flight. ECF No. 89-3 ¶ 47; ECF No. 91-1 at 6. Neither Plaintiff requested any assistance from Golden Touch before boarding. ECF No. 89-3 ¶¶ 51, 54; ECF No. 91-1 at 6.

An airport employee stood at the bottom of the ramp directing Plaintiffs to board the Golden Touch bus. ECF No. 89-3 ¶ 55; ECF No. 91-1 at 6. Velasquez boarded the bus first, and did not request that the Golden Touch driver or anyone else assist Leonard. ECF No. 89-3 ¶¶ 48, 53, 56, 57; ECF No. 91-1 at 6. Leonard then stepped onto the bus without asking the Golden Touch driver for assistance, and fell and cut her leg. ECF No. 89-3 ¶¶ 49-50; ECF No. 91-1 at 6. Velasquez did not help Leonard onto the bus, nor did she see Leonard fall. ECF No. 89-3 ¶¶ 52, 83; ECF No. 91-1 at 6, 13.

The parties dispute the height of the Golden Touch bus at the time Leonard attempted to board it. ECF No. 89-3 ¶¶ 64-65; ECF No. 91-1 at 10, 11. The Golden Touch bus driver, whom Defendants credit, testified that the bus was "kneeling" such that the step onto the bus was 4-5 inches above the ground. ECF No. 89-3 ¶¶ 63-65. Plaintiffs rely on the testimony of a bus passenger who saw Leonard fall; he stated that the step was "about 14 inches" high. ECF No. 91-2 ¶ 22.

### 4. Plaintiffs' Alleged Injuries

Leonard sustained a 15cm laceration on her leg as a result of the fall. ECF No. 91-2 ¶ 19; ECF No. 100-1 at 3. She began bleeding, and Velasquez tried apply a tourniquet to Leonard's leg. ECF No. 91-2 ¶¶ 18, 22; ECF No. 100-1 at 3. Velasquez became covered in her mother's

blood. ECF No. 91-2 ¶ 18; ECF No. 100-1 at 3. Velasquez claims to have "sustained emotional distress" from seeing her mother's injuries and needing to provide first aid. ECF No. 33 at 13.

## STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute between the parties must be both genuine and material to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is material where it would affect the outcome of the suit under the relevant substantive law. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A dispute is genuine where a rational trier of fact could return a verdict for the non-movant. *Id.*

The movant bears the initial burden to demonstrate the absence of a genuine issue of material fact for trial. *Beard v. Banks*, 548 U.S. 521, 529 (2006). Once the movant has carried this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" in question. *Scott*, 550 U.S. at 380 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Township*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Siegel Transfer, Inc. v. Carrier Express,*

*Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995).

Each party must support its position by "citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Scott*, 550 U.S. at 380. At this stage, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249.

## DISCUSSION

"To sustain a cause of action for negligence, a plaintiff must establish four elements: '(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages.'" *Townsend v. Pierre*, 221 N.J. 36, 51 (2015) (quoting *Polzo v. Cnty. of Essex*, 196 N.J. 569, 584 (2008)). A plaintiff "bears the burden of establishing those elements by some competent proof." *Davis v. Brickman Landscaping, Ltd.*, 219 N.J. 395, 406 (2014). "The threshold inquiry in a negligence action is whether the defendant owed the plaintiff a duty of care." *Holmes v. Kimco Realty Corp.*, 598 F.3d 115, 118 (3d Cir. 2010). The existence of a duty of care is generally a matter of law. *Id.* (citing *Carvalho v. Toll Bros. & Developers*, 143 N.J. 565, 572 (1996)). "Under New Jersey law, 'whether a person owes a duty of reasonable care toward another turns on whether the imposition of such a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy.'" *Id.* (quoting *Monaco v. Hartz Mountain Corp.*, 178 N.J. 401, 418 (2004)).

Ordinarily, a landowner owes a duty "to those who enter the premises upon an invitation for business purposes to provide a reasonably safe place to do that which is within the scope of

the invitation." *Keith v. Truck Stops Corp. of Am.*, 909 F.2d 743, 745 (3d Cir. 2009) (quoting *Butler v. Acme Mkts., Inc.*, 89 N.J. 270, 275 (1982)) (alterations omitted). To prove a breach of that duty, a plaintiff must show "that the defendant had actual or constructive knowledge of the dangerous condition that caused the accident." *Nisivoccia v. Glass Gardens, Inc.*, 175 N.J. 559, 563 (2003)

### 1. Count 2: United

Leonard flew on United to Newark Airport and was injured while attempting to board a bus—operated by Golden Touch— that would take her to her United connecting flight. ECF No. 89-1 ¶¶ 1, 3, 49. Defendants contend that United's duty to Plaintiffs is set by the federal Air Carrier Access Act ("ACAA"), 49 U.S.C. § 41705 and implementing regulating 14 C.F.R. § 382, which they argue preempts "any common law duty of care." ECF No. 89-4 at 4-5. Defendants are wrong.

Defendants rely on *Abdullah v. Am. Airlines, Inc.*, that "the entire field of aviation safety is federally preempted" by the ACAA. 181 F.3d 363, 375 (3d Cir. 1999). But the Third Circuit later clarified that *Abdullah*'s holding is narrower than it appears. In *Elassaad v. Indep. Air, Inc.*, the Court of Appeals explained that the preemption recognized in *Abudullah* extends only to injuries occurring when the aircraft is "being operated for the purpose of air navigation." 613 F.3d 119, 130 (3d Cir. 2010). Indeed, the ACAA preempted any common law duty of care in *Abdullah* because the plaintiff was allegedly injured due to in-flight turbulence. *Elassaad*, 613 F.3d at 125 (citing *Abdullah*, 181 F.3d at 365). By contrast, the Third Circuit found the ACAA inapplicable in *Elasaad* "when a passenger is disembarking a plane" because disembarkation from and "operation" of an airplane are distinct. *Id.* at 127-29. No court has dealt with the precise situation here: a plaintiff injured boarding airport-provided transportation from one flight

to another. But if disembarkation was sufficiently remote from "operation" of an aircraft such that the ACAA would not apply, then the same must be true where a plaintiff falls boarding a between-flights bus.[4] The New Jersey common law duty of care, rather than the ACAA, applies to Plaintiffs' claims against United.

Contrary to Defendants' contention, ECF No. 100 at 3-4, the Magistrate Judge did not find that the ACAA applies to Plaintiffs' claims against United. *See Leonard v. Golden Touch Transportation of New York, Inc.*, No. 15CV2084WHWCLW, 2016 WL 7367174 (D.N.J. Feb. 18, 2016). Magistrate Judge Waldor granted Leonard's motion to amend the complaint to "assert[] violations of § 382 *in support of her claims for negligence.*" *Id.* at *2 (emphasis added). As the italics demonstrate, Leonard does not bring distinct "claims for relief under the ACAA or its regulations," *id.*, but instead claims for negligence that are *supported* by Defendants' alleged violations of the ACAA. The common law duty of care applies to Plaintiffs' claim against United.

The parties dispute what that duty of care is. Defendants contend that United may only be liable for "negligent premises liability," under which the defendant "must take such steps to correct or give warning of [any] hazardous conditions of defects" of which the defendant is or should be aware. ECF No. 89-4 at 5 n.3; *id.* at 13 (quoting N.J. Model Civ. Jury Charge 5.20F(5). Plaintiffs, by contrast, maintain that United should be held to the higher duty of care owed by common carriers. ECF No. 91 at 11-14. Specifically, "[c]arriers wh[ich] accept passengers entrusted to their care must use great caution to protect them, which has been described as the 'utmost caution characteristic of very careful prudent men,' or 'the highest

---

[4] That United undisputedly operated the aircraft that took Plaintiffs from Norfolk to Newark is of no moment. In *Abdullah* and *Elasaad*, the courts were concerned with the locus of the *injury*—whether the *injury* took place as a result of or during aircraft operation. Leonard's did not.

possible care consistent with the nature of the undertaking[.]'" *Ricci v. American Airlines*, 226 N.J. Super. 377, 381 (App. Div. 1988) (citation omitted). "In the case of a common carrier, the duty imposed requires not only that the transportation vehicle be kept safe, but that a safe means of ingress and egress be maintained for the use of the passengers." *Buchner v. Erie R. Co.*, 17 N.J. 283, 286 (1955). This includes eliminating dangerous conditions "off the [common carrier's] property, [including] directly in the route normally pursued and used by the passengers, presumably with the full knowledge of the" common carrier. *Id.* at 288 (finding railroad operator liable for injury caused by malfunctioning street light adjacent to—but not on—railroad station property).

Airlines are common carriers under New Jersey law. *Ricci*, 226 N.J. Super. at 381-82 (American Airlines a common carrier subject to elevated duty of care). But that does not settle the matter. United would only be held to the higher standard of care if its common carrier duty extends to the Golden Touch bus boarding area, outside the terminals and any area under United's control. New Jersey courts have not decided this precise question, but one other court in this District has. *See Kantonides v. KLM Royal Dutch Airlines*, 802 F. Supp. 1203, 1213 (D.N.J. 1992) ("When a federal court is faced with a question of state law that has not been interpreted, it must predict how the New Jersey Supreme Court would rule if presented with this case." (quoting *McWilliams v. Yamaha Motor Corp.*, 780 F. Supp. 251, 256 (D.N.J. 1991)).

In *Kantonides*, the plaintiff sued KLM Royal Dutch Airlines after falling on a malfunctioning moving walkway in the common area airport terminal. 802 F. Supp. at 1204-05. The plaintiff had recently disembarked from one KLM flight and was walking across the terminal to her KLM connecting flight. *Id.* Upon suing the airline, Ms. Kantonides argued that KLM should be held to the elevated duty of care applicable to common carriers because she was

transferring from one flight to another. *Id.* at 1212-13. But the court rejected that argument, reasoning that KLM did not owe the plaintiff *any* duty of care regarding a moving walkway "a couple hundred feet from either of the KLM gates at issue." *Id.* at 1215. This court agrees with Judge Lechner: "Requiring an air carrier to be liable for injuries to passengers occurring beyond the areas within their control or their ability to regulate would violate principles of foreseeability and fairness." *Id.* at 1216.

As in *Kantonides*, United did not have control or possession over the area in which Leonard fell. And there is no evidence in the record from which a jury could infer that the Golden Touch bus was located close enough to either United gate—Plaintiffs' flight from Norfolk or their flight to Manchester—such that United's duty of care should be extended to the bus parking area. Indeed, Plaintiffs needed to ride in a golf cart to reach the ramp leading to the Golden Touch bus. No reasonable jury could find that Plaintiffs were anywhere near a United gate. Plaintiffs' argument, then, rests solely on the fact that they were transferring between United fights in a relatively short period of time. ECF No. 91 at 11. But *Kantonides*—which like this case involved a transfer of approximately one hour—rejected that exact argument. 802 F. Supp. at 1215 ("The Kantonides' argument that KLM owed them a duty the entire time they were traveling, because KLM required them to transfer airplanes in Amsterdam, is rejected."). Consequently, United owed no duty of care to Plaintiffs at the time Leonard fell; the motion is granted as to United.

2. **Count 4: Gateway**

When Plaintiffs arrived at Newark Airport, they boarded an electric cart that took them to the ramp leading down to the Golden Touch bus. ECF No. 89-3 ¶ 40; ECF No. 91-1 at 5. Gateway had been contracted to provide electric cart service, ECF No. 92-4 at 28, but Gateway

10

denies operating the cart that transported Plaintiffs, ECF No. 102-2 ¶ 9. In either case, Plaintiff's claims against Gateway fail.

Assuming Gateway operated the electric cart that transported Plaintiffs from their arrival gate to the ramp, Plaintiffs' only allegation against Gateway would be that Gateway's employee "rushed" or "hurried" them "from one terminal to another[.]" ECF No. 33 at 11. The only record evidence supporting this allegation is Leonard's and Flora's interrogatory responses stated that they were told to hurry to board the Golden Touch bus. ECF No. 102-2 ¶ 14. The Court is aware of no authority for the proposition—which goes unsaid in Plaintiffs' papers—that a common carrier breaches its duty of utmost care if it "hurries" a disabled passenger. And no reasonable jury could find based on Plaintiffs' evidence that Gateway was negligent in its treatment of Leonard. This renders any dispute over whether Gateway or Plaintiffs should be held responsible for a rushed transfer, ECF No. 102 at 8, immaterial. Summary judgment is granted to Gateway, and Count 4 is dismissed.

### 3. Count 3: Golden Touch

Plaintiffs argue that Golden Touch was negligent in failing to assist Leonard in boarding the bus despite knowing that she needed mobility assistance. ECF No. 91 at 16-17. They contend that Golden Touch as a common carrier owed Leonard a duty of "utmost care." *Id.* Defendants disagree, arguing that Golden Touch should be held to a business-invitee standard—that is, Golden Touch would only be liable for injuries resulting from "a dangerous condition" of which it "had either actual or constructive notice[.]" ECF No. 89-4 at 11-12. This disagreement is immaterial, for summary judgment would be appropriate under even the elevated common carrier duty of care.

As discussed, common carriers must exercise "the utmost caution characteristic of very careful prudent men," *Ricci*, 226 N.J. Super. at 381, which requires "not only that the transportation vehicle be kept safe, but that a safe means of ingress and egress be maintained for the use of the passengers." *Buchner*, 17 N.J. at 286. Courts have recognized that bus stairs may become dangerous conditions due to snow, *Brooks v. Bi-State Dev. Agency*, 787 S.W.2d 713, 715 (Mo. 1990), ice, *Marley v. New England Transp. Co.*, 133 Conn. 586, 589 (1947), slush, *Anderson v. Transit Auth. of City of Omaha*, 241 Neb. 771, 776-77 (1992), overcrowding, *Miller v. Pub. Serv. Co-ordinated Transp.*, 7 N.J. 185, 190 (1951), or mechanical failure, *Girard v. Am. Airlines, Inc.*, No. 00-CV-4559 ERK, 2003 WL 21989978, at *10 (E.D.N.Y. Aug. 21, 2003)[5]. No court has held that a high stair is itself a dangerous condition. Plaintiffs' conclusory arguments regarding the height of the stair—and lack of expert testimony—do not persuade the Court to break new ground. By failing to identify any condition endangering passengers' "means of ingress and egress," Plaintiffs have not met their burden of evidencing Golden Touch's negligence. *See Buckelew v. Grossbard*, 87 N.J. 512, 525 (1981) (noting a "presumption against" negligence and that "the burden of proving negligence is on the plaintiff").

### 4. Count 1: The Port Authority

The Port Authority is the commercial landlord of Newark Airport, through which Plaintiffs were travelling when Leonard fell attempting to board the Golden Touch bus. ECF No. 89-3 ¶ 26; ECF No. 91-1 at 4. The parties agree that the Port Authority should be held to the duty of care applicable to owners/occupiers of land. *See* ECF No. 91-4 at 17; ECF No. 100 at 7.

---

[5] *Girard* was not decided under common law negligence principles, but instead under Article 17 of the Warsaw Convention, which obviated the need for the plaintiff to prove notice and lack of due care. *Girard*, 2003 WL 21989978, at *10. But the court held that "the ultimate determination of whether Ms. Girard's injury was caused by" the allegedly faulty bus stair "should be left to the jury." *Id.*

Plaintiffs and Defendants disagree, though, regarding whether an owner/occupier of land is liable for the dangerous activities of independent contractors upon its premises. ECF No. 91-4 at 17-19; ECF No. 100 at 7-9. For their affirmative answer, Plaintiffs rely on New Jersey Model Civil Charge 5.20E, which reads, "The owner/occupier of the property owes a duty to exercise reasonable care in the conduct of activities on the premises to persons who are allowed or have a right to be on the premises." N.J. Model Civ. Jury Charge 5.20E. Their reliance is misplaced: Model Civil Jury Charges do not bind this Court. *See State v. Bryant*, 419 N.J. Super. 15, 28 (App. Div. 2011) ("[T]he provisions of the Model Jury Charge . . . are not binding authority[.]").

Ordinarily, in New Jersey "an employer that hires an independent contractor is not liable for the negligent acts of the contractor in the performance of the contract." *Bahrle v. Exxon Corp.*, 145 N.J. 144, 156 (1996). New Jersey law recognizes three exceptions to this rule: "(a) where the landowner retains control of the manner and means of the doing of the work which is the subject of the contract; (b) where he engages an incompetent contractor; or (c) where . . . the activity contracted for constitutes a nuisance Per se." *Majestic Realty Assocs., Inc. v. Toti Contracting Co.*, 30 N.J. 425, 431 (1959). The activity for which the Port Authority hired Golden Touch—operation of a shuttle bus—is not "a nuisance Per se." *Id.* Nor is there any record evidence from which a reasonable jury could find that the Port Authority knew Golden Touch to be incompetent. *See Andrews v. Jerud*, No. A-6036-12T3, 2014 WL 4998417, at *4 (N.J. Super. Ct. App. Div. Oct. 8, 2014) (no landowner liability for independent contractor where no evidence that "defendants knew" independent contract was incompetent). Consequently, the Port Authority may only be liable for Golden Touch's negligence if it "retain[ed] control of the manner and means of" Golden Touch's shuttle bus service. *Majestic*, 30 N.J. at 431.

This exception is satisfied where the landowner retains "the right to say how the job shall be done;" the right of "supervision for the purpose of seeing that the work is done in accordance with the contract and specifications" is insufficient. *Id. See also Mavrikidis v. Petullo*, 153 N.J. 117, 135 (1998) (The "supervisory interest relates [only] to the result to be accomplished, not to the means of accomplishing it."); *Conti v. CNS Cleaning Co.*, No. A-6176-03T5, 2005 WL 3806392, at *2 (N.J. Super. Ct. App. Div. Mar. 1, 2006) (landowner did not retain control of project where its involvement was limited to "quality control," site inspections, and reprimands "for poor performance").

Plaintiffs argue that the Port Authority retained the control over the manner and means of Golden Touch's operations because the Port Authority "should have known about" Golden Touch's rule prohibiting a bus driver from leaving his seats unless he is explicitly requested to assist a disabled passenger: "whether or not this was a reasonable thing for the Port Authority to allow to take place on its premises is a question to be decided by the jury." ECF No. 91 at 18-19. But a rule set forth by *Golden Touch* does not establish that *the Port Authority* retained "the right to say how [Golden Touch's] job shall be done[.]" *Majestic*, 30 N.J. at 431.

Plaintiffs next contend that the Port Authority retained the right "to promulgate rules as to how Golden Touch . . . conduct[s] their operations at the airport[.]" ECF No. 91 at 18-19. But Plaintiffs admit that "[n]either the Port Authority nor Golden Touch has provided any such rules in its discovery responses[.]" *Id.* at 19. There is no record evidence from which the Court or a jury could conclude that the Port Authority *in fact* "retain[ed] control of the manner and means of" Golden Touch's operations. *Majestic*, 30 N.J. at 431. The Port Authority is not liable for Golden Touch's alleged negligence.

### 5. Count 5: Negligent Infliction of Emotional Distress

Vasquez's claim for Negligent Infliction of Emotional Distress "requires proof of the following elements: (1) the death or serious physical injury of another caused by defendant's negligence; (2) a marital or intimate, familial relationship between plaintiff and the injured person; (3) observation of the death or injury at the scene of the accident; and (4) resulting severe emotional distress." *Portee v. Jaffee*, 84 N.J. 88, 101 (1980). As to the fourth element, the emotional distress must be "so severe that no reasonable man could be expected to endure it." *Runyon v. Smith*, 163 N.J. 439, 444 (2000). The first two elements are undisputedly satisfied. Defendants contend that Velasquez did not witness Leonard's accident and that Velasquez has proffered no evidence of emotional distress. ECF No. 89-4 at 21-24; ECF No. 92-5 at 11-14. Velasquez responds that her witnessing Leonard's injury shortly after Leonard fell is sufficient under *Portee*'s third prong, and that witnessing her mother bleed profusely has indeed caused her severe emotional distress. ECF No. 91 at 21-25; ECF No. 102 at 17-21.

Velasquez's argument that she suffered severe emotional distress is belied by her deposition testimony. When Defendants asked Velasquez "how have you been emotionally or physically affected by the incident," she replied, "I'm good. I'm good. No, I didn't have to see any[ doctors] or anything like that." Vogel Decl. Ex. N at 91:8-11. And when asked to describe "the emotional distress you've experienced because of the accident," Velasquez responded, "Not ongoing, but at the time it was just crazy." *Id.* at 90:15-19. Because Velasquez puts forth no further evidence of emotional harm, ECF No. 89-3 ¶¶ 85-89; ECF No. 91-1 at 13-14, her evidence of harm boils down to distress at the time of the accident.

"[F]actors to be considered in determining" the "severity" of emotional harm include the "intensity and duration" of the harm. Restatement (Third) of Torts § 46 (2012). While

15

Velasquez testified that she suffered significant distress at the time of her mother's injury, that distress did not linger. Vogel Decl. Ex. N at 90:15-91:11. This is insufficient for a reasonable jury to find severe emotional distress resulting from Golden Touch's alleged negligence. *Compare Lacy v. Cooper Hosp./Univ. Med. Ctr.*, 745 F. Supp. 1029, 1036 (D.N.J. 1990) (no severe emotional distress where plaintiff "reported that she was angry, she grieved, she had stress, and she did not sleep at night," but "has not had any psychiatric treatment since [the incident] nor does she think such treatment would be beneficial to her"), *and Acevedo v. Essex Cty.*, 207 N.J. Super. 579, 586 (Law. Div. 1985) (no evidence of severe emotional distress where plaintiff's "answers to interrogatories reveal no damage, no medical bills and *no permanency*" (emphasis added)), *with Litwin v. Whirlpool Corp.*, 436 N.J. Super. 80, 90 (App. Div. 2014) (Plaintiff raised a question of material fact regarding severe emotional distress by "presenting evidence he suffers from PTSD as a result of witnessing the injury-producing event."). Put simply, Velasquez has not shown that witnessing Leonard's injuries "str[uck] at [her] basic emotional security[.]" *Frame v. Kothari*, 115 N.J. 638, 643 (1989) (quoting *Portee*, 87 N.J at 99). Summary judgment is granted as to Count 5.

## CONCLUSION

Defendants' motions for summary judgment are granted. An appropriate order follows.

DATE: 12 December 2018

William H. Wells
Senior United States District Court Judge

16